PETROLEUM ENGINEERS PRODUCING CORPORATION, Plaintiff in Error,

v.

Alton L. WHITE, Defendant in Error.

No. 38648.

Supreme Court of Oklahoma.

March 15, 1960.

Bradford & Watson, by H. B. Watson, Jr., Tulsa, for plaintiff in error.

John F. Pendleton, Nowata, for defendant in error.

BERRY, Justice.

The parties who occupy the same relative position here as in the trial court will be referred to herein as they appeared in said court.

In this action plaintiff seeks to establish the validity and priority of an oil and gas lease under date of October 19, 1954, covering the SW/4 of SE/4 and SE/4 of NW/4 of SE/4, Sec. 13, T. 25N, R. 16E, Nowata County, Oklahoma, which lease was granted by Edith M. Hayden to W. H. Davison. W. H. Davison assigned the lease to plaintiff on November 2, 1954. The primary term of the lease was 5 years. Plaintiff also seeks injunctive relief as to defendant and an accounting from defendant for proceeds of oil produced and sold by defendant from the land.

On February 10, 1958, Edith M. Hayden granted an oil and gas lease covering the above described land to defendant. The primary term of this lease was 1 year. Within said primary term defendant drilled a well or wells to the Bartlesville Sand underlying the land, which well or wells produced oil that was marketed. At the time defendant took said lease, the lease under which plaintiff claims was of record and had not been released. As of date of filing the instant action defendant had drilled a total of five wells to the Bartlesville Sand on the leased land at a cost of from $30,000 to $35,000. All wells produced oil which was marketed. Defendant testified that he planned to drill input water wells on the land in order to further repressure the Bartlesville Sand.

Between October 19, 1954 and October 19, 1955, plaintiff drilled input wells to the Bartlesville Sand, which wells were drilled a few feet east of the west line and one was drilled a few feet north of the south line of the land. Plaintiff, during said year, also plugged several old abandoned wells on the land which had previously been drilled to and which had produced from the Bartlesville Sand until the pressure in said Sand reached the point where the wells could not be economically produced. Plaintiff injected water into said input wells in order to move oil away from same and repressure the Bartlesville Sand which made it economically feasible for wells drilled to said Sand west and south of the land in controversy, in which plaintiff owned an interest, being economically produced and to drill wells on the land in controversy to the Bartlesville Sand which could be economically produced. A total of four input wells were drilled by plaintiff. Three were drilled near the west property line and one was drilled near the south property line. In drilling the input wells, Bartlesville Sand saturated with oil was encountered but no oil was produced from the wells and it appears that it would not have been economically feasible to have

produced oil therefrom. The Bartlesville Sand was the only known horizon that would produce oil.

In the lease that plaintiff relies upon, it is provided in part as follows:

"It is agreed that this lease shall remain in force for a term of five (5) years from date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

\*   \*   \*   \*   \*   \*

"If no well be commenced on said land on or before the 19th day of October, 1955, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the Fourth National Bank at Tulsa, Oklahoma or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Fifty ($50.00) Dollars which shall operate as rental and cover the privilege of deferring the commencement of a well for 12 months from said date. \*  \*  \*"

\*   \*   \*   \*   \*   \*

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

In the lease no mention was made of input wells, flooding or repressuring operations.

The trial court found and held in substance that the input wells were not drilled as test wells for oil and gas; that said wells did not and could not produce oil in paying quantities; that since plaintiff did not commence a test well for oil or gas on or before the expiration of the first year of the lease and did not pay a delay rental on or before expiration of said year, plaintiff's lease automatically terminated.

As indicated, the sole issue presented by this appeal is this: Did the drilling of input wells by plaintiff during the first year of the lease for use in injecting water into the only known oil-producing horizon underlying the leased land in order to repressure said horizon and thus make it economically feasible to produce oil for adjoining land and from wells that were to be drilled on the leased land satisfy the second above-quoted provision of the lease?

Plaintiff does not contend that the well contemplated by the provisions of the lease to the effect that "If no well be commenced on said land on or before the 19th day of October, 1955, this lease shall terminate \* \* \* unless the lessee on or before that date shall pay \* \* \*" a delay rental, was a test well for oil and gas and not an input well. Plaintiff does contend, however, that it was contemplated by lessor and lessee that repressuring operations would be necessary in order to produce additional oil from the Bartlesville Sand underlying the leased land which was the only known horizon from which oil could be produced; that lessor and lessee understood that the drilling of input wells would be the initial step in developing the land; that it would take more than one year to drill said wells and force water into the Bartlesville Sand in order to repressure the Bartlesville Sand underlying the land. Plaintiff uses the foregoing as a premise supporting its argument to the effect that drilling of input wells, injecting water into same and thereby repressuring the Bartlesville Sand and plugging old abandoned wells on the land constituted due diligence and substantial compliance with the above quoted provision of the lease. Plaintiff contends that its activities in this particular are comparable to drilling a test well for oil or gas which it asserts is sufficient to prolong the life of lease for the primary term thereof, provided lessee thereafter exercises reasonable diligence. Plaintiff cites Murphy v. Garfield Oil Company, 98 Okl. 273, 225 P. 676 and Bristol v. Colorado Oil & Gas Corporation, 10 Cir., 225 F.2d 894, as supporting its contention. That in view of the fact that plaintiff sub-

stantially complied with the drill-or-pay-delay-rental provision of the lease, its lease did not terminate, and that in order to terminate the lease it was incumbent upon the lessor to first demand that the lease be developed and in an action to cancel the lease establish lack of diligence on the part of plaintiff in developing the lease.

The lessor did not testify and there is no evidence that her understanding was that suggested by plaintiff. If it were proper to infer that lessor at time the lease was granted understood that repressuring operations were necessary, and we seriously doubt that this can be inferred, it would not be permissible to infer that lessor understood that the repressuring operations would extend over a year or that if a test well for oil was not commenced within the first year of the lease a delay rental would not be timely paid. In any event, plaintiff has neither plead nor proved an executed oral contract between lessee and lessor at variance with the drill-or-pay-delay-rental provisions of the lease and for said reason the rights of lessor are to be determined by the provisions of the lease. 15 O.S.1951 § 237.

The lease in controversy is generally referred to as an "unless lease". It is settled law that such a lease terminates without affirmative action on the part of lessor upon lessee failing to either commence a well or pay delay rentals within the period provided in the lease. See Eastern Oil Co. v. Smith, 80 Okl. 207, 195 P. 773; Williams v. Ware, 167 Okl. 626, 31 P.2d 567 and Phillips Petroleum Co. v. Curtis, 10 Cir., 182 F.2d 122.

In view of the fact that plaintiff neither commenced a test well for oil or gas nor paid a delay rental within the term provided by the lease in controversy, the lease automatically terminated on October 19, 1955, and was thereafter without force or effect.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.