RICKY ALLEN ROSE *v.* STATE OF INDIANA.

[No. 3-575A97.  Filed April 13, 1976.]

*Robert S. Bechert, Tremper & Bechert,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Following trial to the court, defendant-appellant Ricky Allen Rose was convicted of the crime of operating or driving a vehicle while under the influence of intoxicating liquor.[1] His motion to correct errors was overruled, and he subsequently perfected this appeal.

On appeal, Rose first contends that the trial court erred in denying his motion for involuntary dismissal at the close of the State's case-in-chief. However, the record discloses that the appellant presented evidence in his behalf following the overruling of such motion. In these circumstances, any error occasioned by the ruling of the trial court has been waived by the appellant. *Pinkston* v. *State* (1975), 163 Ind. App. 633, 325 N.E.2d 497.

The second contention made by appellant is that the judgment of the trial court is not supported by sufficient evidence. When questions concerning the sufficiency of evidence are presented on appeal, this court may consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554.

The facts most favorable to the appellee State contained in the record of this cause establish that on March 16, 1974, at between 6:30 and 7:00 A.M., State Police Officer Steven Harris found Rose asleep behind the steering wheel of his car. The engine was running and the lights were on, and the car was stopped at the intersection of Smith Road and Yoder Road, near Uniondale, Indiana, where a car would ordinarily

---

1. IC 1971, 9-4-1-54(b) (Burns Supp. 1975).

stop for a stop sign. Officer Harris testified that he did not see Rose driving the vehicle, but that Rose stated that he had been driving around looking for Indian arrowheads. Smelling alcohol on Rose's breath upon awakening him, Officer Harris advised Rose of the provisions of the Indiana implied consent statutes.[2] After Rose agreed to take a breathalyzer test, Officer Harris drove Rose's car "onto the berm, locked it for him, and then transported him [Rose] to the State Police Post." A breathalyzer test revealed that the appellant had a blood alcohol level of .14 per cent.

Dean Miller testified as a witness on behalf of the defendant, stating that Rose drove them to Rose's home in Uniondale after work on March 15, 1974. They then went looking for Indian artifacts with Rose's neighbor, Mac Tolliver. Miller testified that Mac Tolliver drove Rose's automobile because Rose had a restriction on his license. At dark they went to have something to eat, and afterwards proceeded to Miller's residence. They then played cards until 4:30 or 5:00 A.M., while Rose and Miller drank beer. After the card game, Tolliver and Rose left Miller's home in Rose's automobile with Tolliver driving.

Appellant testified that after leaving Miller's home he and Tolliver had trouble with the car; that it would stall after coming to a stop; that it had been doing this all week; and that the car stalled at the intersection where he was found by Officer Harris. Rose also stated that Tolliver left to procure another car or to get help, leaving the motor running and the lights on. Rose further testified that he left the motor running to keep the heater on and the car warm and he kept the lights on so that no other car would hit him. On cross-examination, however, Rose stated that after Tolliver left he started the car and that that was how he was found behind the steering wheel. When asked why he made no attempt to pull the car off the road, Rose stated that he did not have a driver's license to do so.

2. IC 1971, 9-4-4.5-1 *et seq.* (Burns Code Ed.).

Officer Harris testified on rebuttal that at the time of his arrest Rose never spoke of anyone else being in the car, never requested to contact anyone and never mentioned having trouble with the car. Officer Harris also stated that he encountered no difficulty in pulling the car to the side of the road. Tolliver, the alleged driver of the car that night, did not testify.

IC 1971, 9-4-1-54(b) (Burns Supp. 1975), provides, in pertinent part:

"(2) [A]ny person who operates or drives a vehicle upon any highway while under the influence of intoxicating liquor or unlawfully under the influence of narcotic or other habit forming or dangerous, depressant or stimulant drugs shall be guilty of a misdemeanor and upon first conviction shall be imprisoned for not less than five [5] days nor more than six [6] months, or punished by a fine of not less than twenty-five dollars [$25.00] nor more than five hundred dollars [$500], or by both fine and imprisonment; and the court shall recommend the suspension of the current driving license of the person so convicted for a determinate period of not less than two [2] months nor more than one year."

Appellant asserts that there was insufficient evidence adduced at trial to establish his operation or driving of the vehicle beyond a reasonable doubt. The crux of appellant's contention is that the State's evidence placing him in sole control of a running automobile which was stopped in a traffic lane of a public highway is insufficient to establish that he operated a vehicle on a public highway within the intendment of IC 1971, 9-4-1-54(b), *supra*.

A similar issue was presented to this court in the case of *Poling* v. *State* (1973), 156 Ind. App. 145, 295 N.E.2d 635, under a prior version of IC 1971, 9-4-1-54(b), *supra*, which proscribed only the driving, and not the operation, of vehicles by intoxicated individuals. Therein, this court, at 148 of 156 Ind. App., at 637 of 295 N.E.2d, stated:

"In those jurisdictions where the word 'drive' is used, it has been interpreted as requiring the vehicle to be in motion, not merely standing still with the engine running.

'Operate', on the other hand, has been defined more broadly to include merely controlling the vehicle."

IC 1971, 9-4-1-54 (b), *supra,* was amended subsequent to the decision in *Poling* to proscribe both the operation and driving of motor vehicles while under the influence of intoxicants.[3] In the case of *Bowlin* v. *State* (1975), 164 Ind. App. 693, 330 N.E.2d 353, which arose under the present version of IC 1971, 9-4-1-54 (b), *supra,* this court held that facts similar to those presented by the case at bar were sufficient to establish probable cause to believe that the statute had been violated. The instant case, however, is the first case which has presented the issue of the sufficiency of such evidence to support a conviction for operating a motor vehicle in violation of this statute.

To resolve this question, it is necessary to ascertain the meaning of the word "operates" as employed by our Legislature in amending IC 1971, 9-4-1-54 (b), *supra.* In doing so, it must be remembered that the primary objective in construing a statute is to ascertain and effectuate its general intendment, if possible. *Kirby* v. *Indiana Employment Security Board* (1973), 158 Ind. App. 643, 304 N.E.2d 225. And, it is the duty of the court in construing a statute to give effect to the plain meaning of the language used therein. *State ex rel. Bynum* v. *LaPorte Sup. Ct.* (1973), 259 Ind. 647, 291 N.E.2d 355. Furthermore, a statute must be construed in light of the factual and legal situation existing at the time of its enactment. *State ex rel. Glenn* v. *Smith* (1949), 227 Ind. 599, 87 N.E.2d 813. It is also the rule that penal statutes must be strictly construed against the State, but should not be overly narrowed so as to exclude cases fairly covered by their language. *State* v. *Bigbee* (1973), 260 Ind. 90, 292 N.E.2d 609.

As stated hereinabove in the quotation from *Poling* v. *State, supra,* statutory language proscribing the operation of a motor

---

3. *See,* Indiana Acts 1974, P.L. No. 35, § 3(a)(b), at 154-56.

vehicle while intoxicated has been construed by the courts of other States to include the conduct of an intoxicated individual being in physical control of a vehicle while it is in operation. Furthermore, both IC 1971, 9-4-1-54(b), *supra,* and the Indiana implied consent statute, IC 1971, 9-4-4.5-1, *et seq.* (Burns Code Ed.), have the common purpose of eliminating from our public highways the dangers posed by intoxicated drivers. For this reason, such statutes should be construed with reference to each other and harmonized, if possible, because they are *in pari materia. Board of Medical Registration, etc.* v. *Turner* (1960), 241 Ind. 73, 168 N.E.2d 193; *Porter Memorial Hosp. et al.* v. *Harvey* (1972), 151 Ind. App. 299, 279 N.E.2d 583. The latter statutes apply to any person who "has committed the offense of driving or being in actual physical control of a vehicle while under the influence" of intoxicants. *See,* IC 1971, 9-4-4.5-3 (Burns Code Ed.). Such statute evidences a legislative intent that both it and IC 1971, 9-4-1-54(b), *supra,* apply to situations involving the control of a running vehicle on a public highway by one who is intoxicated.

Moreover, at the time our Legislature amended IC 1971, 9-4-1-54(b), *supra,* to include the operation of a vehicle, the meaning of the prior version of the statute and the word "operate" had been recently construed by this court in *Poling* v. *State, supra.* Therefore, as stated in *Poling,* this court must presume that the Legislature used the word "operate" intentionally, and with knowledge of its meaning.

In light of the foregoing, it must be concluded that the trial court did not err when it held that IC 1971, 9-4-1-54(b), *supra,* proscribed such conduct.

In the case at bar, it is undisputed that the appellant was intoxicated, that he was in sole control of a vehicle which was in operation, and that such vehicle was located upon a public highway, all within the meaning of IC 1971, 9-4-1-54(b), *supra.* The trial court did not

err in holding that there was sufficient evidence adduced at trial to support appellant's conviction.

No reversible error having been shown, the judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported at 345 N.E.2d 257.