Louis Bryan BARR, Jr., et al., Plaintiffs-Appellants,

v.

SUN EXPLORATION CO., INC., et al., Defendants-Appellees.

SUN EXPLORATION CO., INC., et al.,

v.

Louis Bryan BARR, Jr., et al.

No. 1-781A214.

Court of Appeals of Indiana, First District.

June 22, 1982.
Rehearing Denied July 28, 1982.

John Burley Scales, John Wissner, Scales, Wissner & Krantz, Boonville, for Louis Bryan Barr, Jr., Angela Diana Barr, Larry Barr and Sherril Barr.

Stephen M. Johnson, Evansville, for Sun Exploration Co., Inc., Ira Van Tuyl and Elsin Van Tuyl, d/b/a V. T. Drilling Co.

NEAL, Judge.

## STATEMENT OF THE CASE

Plaintiffs-appellants Louis Bryan Barr, Jr., *et al.* (Barr) appeals a negative judgment entered in the Warrick Circuit Court without the intervention of a jury. The court found in favor of defendants-appellees Sun Exploration Co., Inc., *et al.* (SUN) on the consolidated actions of both parties which questioned the continuing validity of an oil and gas lease pursuant to Ind.Code 32–5–8–1.

We affirm.

## STATEMENT OF THE FACTS

We adopt the findings of fact of the trial court as a clear and accurate representation of the evidence most favorable to SUN:

"1.) The defendants, Sun Exploration Co., Inc. and Ira Van Tuyl and Elsin C. Van Tuyl, d/b/a V–T Drilling Company, are the operators and owners respectively of an oil and gas lease located in Warrick County, Indiana and commonly known as the Andy Haas lease.

2.) That Plaintiffs, Louis Bryan Barr, Jr. and Larry Kent Barr, are the current owners of the real estate which encompasses the Andy Haas leasehold.

3.) That Louis Bryan Barr, Jr. served as pumper on said lease and was paid by the defendant, Sun Exploration Company, Inc. for his services continuously and without interruption from July 1, 1968 until January 31, 1980.

4.) That one of Louis Bryan Barr, Jr.'s duties as pumper on said lease was the filing of pumper reports on a weekly basis to report to defendant the operation of said leasehold.

5.) That prior to February 4, 1980, Louis Bryan Barr, Jr. completed a pumper report weekly and saw to it that these reached the office of defendant, Sun Exploration Co., Inc., the lease operator.

6.) That it was the practice of Louis Bryan Barr, Jr. to indicate on the face of the pumper reports problems on that lease that caused the cessation of production.

7.) That the history of the lease indicated during inclement weather that a salt water disposal problem caused periodic temporary cessations in the production of oil from this lease.

8.) That Louis Bryan Barr, Jr. called Marion Berry, an employee of Defendant, by telephone several times during the course of calendar year 1979, specifically in April, July and August, to inform him that the well was not pumping.

9.) That pursuant to pumper's request, Marion Berry responded to said telephone calls by visiting the lease and starting up the pump, the last of which call was made in July of 1979 and his work started the well pumping.

10.) That said actions of Marion Berry and the continued employment of Louis Bryan Barr, Jr. constituted operations for the productions of oil on the subject lease.

11.) That defendants, individually or jointly did not intend to abandon said lease nor did they intend to permanently cease production thereon.

12.) That the original lease of September 28, 1959, on the subject real estate has not been annotated on its face 'Cancelled' or 'Released' or words of similar effect by the Recorder of Warrick County, Indiana.

13.) That the original oil and gas lease of September 28, 1959, has not lapsed but remains in full force and effect."

Upon these findings, the trial court concluded that the oil and gas lease in question was in full force and effect and a binding leasehold upon Barr's real estate.

## ISSUE

Barr presents as the sole issue for review, whether the decision of the trial court is contrary to law in finding the oil and gas lease in full force and effect.

## DISCUSSION AND DECISION

Barr contends that for a period of fourteen months from December, 1978, until April, 1980, SUN did not produce any oil from its well on the leasehold in question, and therefore, by operation of Ind.Code 32–5–8–1, the lease is null and void.

Where the trial court has made findings of fact and conclusions of law, the Court of Appeals considers only that evidence and reasonable inferences therefrom which supports the judgment, and this court will set aside findings of fact and conclusions of law of the trial court only where clearly erroneous. *Sigsbee v. Swathwood*, (1981) Ind.App., 419 N.E.2d 789. A party appealing a negative judgment must establish that the evidence is without conflict and leads to but one conclusion and that the trial court did not reach that con-

clusion. *Citizens National Bank of Whitley County v. Stasell,* (1980) Ind.App., 408 N.E.2d 587.

Ind.Code 32–5–8–1[1] provides:

"All leases for oil and gas heretofore and hereafter entered of record in this state shall become null and void after a period of one (1) year has elapsed since the last payment of rentals thereon as stipulated for in such lease or contract, or *since operation for oil or gas has ceased, both by the nonproduction of oil or gas and the nondevelopment of said lease,* and, upon the written request of the owner of such lands, accompanied with the affidavit of such owner, stating that no rentals have been paid to or received by such owner or any person, bank or corporation in his behalf for a period of one (1) year after they have become due, and that such leases and contracts have not been operated for the production of oil or gas for one (1) years, the recorder of the county in which such real estate is situated shall certify upon the face of such record that such leases and contracts are invalid and void by reason of nonpayment of rentals and is thereby canceled of record, which request and affidavit shall be recorded in the miscellaneous records of said recorder's office. If, at any time subsequent to the cancellation of said lease and contract and within the term provided for in said lease or contract, the lessee shall submit to the recorder a receipt or a canceled check, or an affidavit, showing that such rental has been paid, or an affidavit that said lease has been operated within a period of one (1) year prior to such cancellation, as stipulated in said lease or contract, and that the affidavit of the lessor as hereinabove provided is false or fraudulent, such cancellation shall, by reason of that fact be void, and the recorder shall so certify at the place where the cancellation of such lease and contract has been entered, provided that the owner of any lease canceled by any county recorder, as herein provided, may take an appeal from the order and record of cancellation of the county recorder to the circuit court of the county in which the land is located, within six (6) months from the date of such cancellation of any such lease."

Barr argues that in order to avoid having the lease declared null and void under the statute, the burden is on SUN to show that the operation for oil and gas had not ceased, both by the nonproduction of oil or gas and the nondevelopment of the lease.

As counsel for both sides recognize, the present appeal is the first case to interpret Ind.Code 32–5–8–1. The parties agree that the first section of the statute, relating to rental payments, is not relevant to the case at bar for there was no rental payment provision under the terms of the lease in question. Furthermore, the parties agree that the controlling section of the statute provides that the lease shall become null and void after one year since operation for oil or gas has ceased, both by the nonproduction of oil or gas and the nondevelopment of said lease.

It is Barr's contention that this section means that if SUN fails to produce oil or gas on the leasehold for a period of one year, the lease automatically becomes null and void by operation of the statute. However, as SUN correctly states in its brief, "the clear language of the statute requires both the cessation of development *and* production for there to be a cessation of operations."

All statutes should be read where possible to give effect to the intent of the legislature. *Custard v. City of South Bend,* (1981) Ind.App., 423 N.E.2d 712. In searching for legislative intent, the Court of Appeals looks to the whole of the Act. *H.W.K. v. M.A.G.,* (1981) Ind.App., 426 N.E.2d 129; *Matter of Estate of Souder,* (1981) Ind.App., 421 N.E.2d 12. In construing a statute, words should be accorded their plain and ordinary meaning. *Trustees of Indiana University v. County Department of Public Welfare of Kosciusko County,* (1981) Ind.App., 426 N.E.2d 74.

The words "and" and "or" as used in statutes are not interchangeable, being

1. Formerly Acts 1923, ch. 134, sec. 1.

strictly of a conjunctive and disjunctive nature respectively, and their ordinary meaning should be followed if it does not render the sense of the statute dubious. *Sekerez v. Youngstown Sheet & Tube Company*, (1975) 166 Ind.App. 563, 337 N.E.2d 521.

■ Upon reading the whole statute, we must agree with SUN the legislature intended that both the nonproduction of oil and gas *and* the nondevelopment of the lease together be shown to prove a cessation of operations for oil and gas.

While there are no cases which interpret Ind.Code 32–5–8–1 or the meaning of "the nonproduction of oil or gas and the nondevelopment of said lease," SUN correctly cites *Barrett v. Dorr*, (1965) 140 Ind.App. 295, 212 N.E.2d 29, *trans. denied*, as instructive. The court in *Barrett* had to determine whether the cessation of production on an oil and gas lease constituted abandonment of that lease. The *Barrett* court found that the temporary cessation of oil production did not terminate the lease and it stated:

"The appellants urge here that the appellees, by their failure to pump the well, were guilty of abandonment and that the lease became void; while the appellees contend that no intention to abandon was shown, and that the failure to pump the well was due to conditions beyond their control.

From the evidence here, it might be said that the appellees were delinquent or guilty of mismanagement. However, with all their shortcomings, the lessees did produce oil, they did hire a new operator, they did install a new motor and they did increase production. The trial court decided that the steps taken indicated that the appellees did not intend to abandon the property. The appellants allege that failure to produce oil for the period set out in the complaint rendered the lease void. The trial court found that such allegations had not been sustained and as there was evidence to support the same, we are bound by such findings.

Where there is evidence to sustain such findings of fact, this court will accept them as stated by the trial court. The

trial court was in a position to hear the witnesses and to make a fair determination of the circumstances surrounding this matter. The evidence was conflicting and the court rendered its decision after considering the evidence submitted. We cannot say that the decision was contrary to law when such conflict in the evidence existed. It is only where the evidence is not in conflict and a decision is reached that reasonable minds or men would not have reached, that we can say such a decision is contrary to law. *Pokraka v. Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669; *Hinds, Executor Etc. v. McNair, et al.* (1956), 235 Ind. 34, 129 N.E.2d 553; *Miller, etc. v. Ortman, etc., et al.* (1956), 235 Ind. 641, 665, 136 N.E.2d 17."

140 Ind.App. at 307–8.

■ Although no definition of "operation for oil or gas" is included under Ind.Code 32–5–8–1, under a related act, Ind.Code 32–5–7–1(e), the following definition is provided, as SUN points out:

" 'Operations for oil and gas' shall, unless otherwise indicated by the context of this act, mean the exploring, testing, surveying or otherwise investigating the potential of the subject lands for oil and gas, the actual drilling or preparations for drilling of wells therefor, or any other actions directed toward the eventual production or attempted production of oil and gas from such lands."

Two statutes dealing with the same subject matter should be read together and construed so as to harmonize and give effect to each. *Matter of Lemond*, (1980) Ind., 413 N.E.2d 228. We believe that "operations for oil and gas" as defined under Ind.Code 32–5–7–1 also applies to Ind.Code 32–5–8–1 insofar as the trial court found that SUN was maintaining operations for the production of oil on the lease.

■ The evidence shows that Barr was employed as a pumper by SUN on the lease in question, and was paid for his services from July, 1968, until January 31, 1980. During the course of 1979, the year in which Barr argues no oil was produced, activities to repair, maintain and operate

the oil well toward the eventual production or attempted production of oil were in evidence. Several times during 1979 SUN, through its employees, attended the well, and worked on the pump. Testimony revealed that severe thunderstorms during the Spring and Summer months of 1979 resulted in the pump's being struck and shut down by lightning and flooding rains. SUN paid Barr $60 per month from January, 1979 through and including January 31, 1980, for services as a pumper, and Barr cashed all his checks. Certainly, these activities cannot amount to the nondevelopment of said lease as set forth under Ind. Code 32–5–8–1. More importantly, we cannot say that the trial court's finding that these activities constituted operations for the production of oil on the subject lease was clearly erroneous in light of the evidence and the statute. Therefore, we hold that the decision of the trial court was not contrary to law.

Judgment affirmed.

RATLIFF, P. J., and ROBERTSON, J., concur.