Reid Michael HUEY, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–885A267.

Court of Appeals of Indiana, Second District.

Feb. 2, 1987.

J.J. Paul, III, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Huey appeals a conviction of Operating while Intoxicated, a class A misdemeanor. He raises four issues:

1) Whether he was unlawfully seized;

2) whether the corpus delecti of operating while intoxicated includes driving on a public road;

3) whether field sobriety tests require "Miranda warnings";

4) whether the evidence is sufficient to sustain his conviction.

## FACTS

Around 1:00 a.m. on November 6, 1984 Indianapolis police officers McGlinsey and Burge "received a radio run to [6201 North Keystone] which is a Shell Station on a small silver car following a yellow cab." Record at 40. Upon their arrival at the station, the officers observed a silver Toyota Corolla stopped, but with its motor running and its lights on, approximately fifteen (15) feet behind the yellow taxi. Huey was alone, sitting behind the wheel in the Toyota. The taxi contained two female fares in addition to the driver. When the officers arrived at the scene the taxi driver "was out of the vehicle—without me asking any questions he stated, 'That man's following me.'" Record at 41. Officer McGlinsey instructed the taxi driver to proceed and walked over by the open window on the driver's side of the Toyota. There he asked Huey why he was following the cab to which Huey responded, "On orders from the treasury department." Record at 91. Officer McGlinsey then asked Huey for some identification. Huey said he "didn't have any." (Record at 91), and Officer McGlinsey smelled an odor of intoxicating beverage on Huey's breath and observed Huey's eyes were glassy. Officer McGlinsey then asked Huey to step from the vehicle. In doing so, Huey stumbled and nearly fell. McGlinsey then patted

Huey for weapons. Finding none, McGlinsey "examined" the Toyota. He found a wallet underneath the driver's seat containing Mr. Huey's operator's license and other personal papers. At that time Officer McGlinsey advised Huey he "had reason to believe that he was operating a vehicle while intoxicated and asked him to perform some field sobriety tests." (Record at 93). When, in the officer's opinion, Huey failed the field sobriety tests, the officer offered and Huey agreed to take a chemical breath test. Huey registered .22% blood/alcohol content.

## DECISION

### A.

Huey argues the trial court erred in admitting the field sobriety and breathelyzer test evidence because, at the time he was ordered to perform the field tests, Officer McGlinsey had neither probable cause to believe Huey had committed the offense of drunken driving nor a justifiable suspicion warranting his detention for any purpose.

■ We disagree. According to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, a person may be detained on less than probable cause if the officer has a justifiable suspicion the suspect has committed or is about to commit a crime providing the intrusiveness and nature of the seizure is "reasonably related in scope to the justification for [its] initiation. The officer must be able to point to specific and articulable facts which reasonably warrant the intrusion upon the individual's right of privacy." 392 U.S. at 21, 88 S.Ct. at 1880.

■ And, not all police-citizen encounters implicate Fourth Amendment interests. *Florida v. Rodriquez* (1984) 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165. In that case, a Florida trial court suppressed evidence on the grounds the police did not have articulable suspicion justifying the initial stop of three individuals first observed standing at an airlines ticket counter in the Miami airport. The officers followed the three through the concourse and up an escalator, at which point one of the suspects apparently became aware of the officers' presence. One of the officers confronted the accused and asked if they might talk, to which the accused agreed. In reversing the trial court ruling which was affirmed by the state court of appeal, the Supreme Court held "[t]he initial contact between the officers and the accused, where they simply asked if he would step aside and talk with them, was clearly the sort of consensual encounter that implicates no Fourth Amendment interest." 469 U.S. at 5–6, 105 S.Ct. at 310–311.

■ Here, there was no police initiated "stop". Huey was already stopped behind the taxi when the police arrived. Then, Officer McGlinsey alone approached Huey's car and asked him why he was following the cab. At this point, Officer McGlinsey did not have specific articulable facts indicating Huey had committed or was about to commit a crime. However, the encounter between Huey and McGlinsey was the type of consensual contact not implicating Fourth Amendment interests. It was a one on one encounter, Huey was in his own car, McGlinsey did not stop Huey, and the question McGlinsey asked did not accuse Huey of a crime. Consequently, at that point in time, the encounter was not a seizure which required specific, articulable facts indicating a crime had been committed or was about to be committed. The officer had done nothing to make Huey think he was not free to leave, and Huey did not have to answer the officer's question.

■ However, the inappropriate answer given, "on orders of the treasury department" (Record at 91.) coupled with the smell of alcohol on Huey's breath, his glassy eyes, and his position in the driver's seat of a vehicle with its motor running and its lights on, are specific and articulable facts which supported a justifiable suspicion Huey had been operating a vehicle while intoxicated. Further, the level of intrusion, being detained to perform sobriety tests, was reasonably related in scope to this justifiable suspicion. Hence, Officer McGlinsey acted lawfully in ordering Huey to perform field sobriety tests. Then, when Huey failed the field sobriety tests, Officer McGlinsey had probable cause to

arrest Huey. After the arrest, and in accordance with Indiana Code Ann. § 9–11–4–2 (Burns Supp.1986), Officer McGlinsey offered Huey the opportunity to submit to a chemical test, and explained Indiana's implied consent law and the consequences of refusing to subbmit to a chemical test. Accordingly, Huey's detention was lawful and the evidence subsequently obtained properly admitted at trial.

### B.

Huey argues the evidence was insufficient to sustain a conviction for operating a vehicle while intoxicated. We address this issue in conjunction with Huey's argument the trial court violated the doctrine of *corpus delecti* in admitting evidence of statements made by Huey. Huey asserts one must be in control of the vehicle on a public road in order to violate Ind.Code § 9–11–2–2. At trial, the only evidence adduced probative of whether Huey had been on public roads prior to being at the service station was Officer McGlinsey's statement Huey responded "On orders of the treasury department" to his question "Why were you following the taxi?" Neither the taxi driver nor the taxi passengers testified at trial.

█ Huey argues his out-of-court statement was improperly admitted because the *corpus delecti* had not been independently proven. *Corpus delecti*, proof the crime had been committed at all, must be proven by independent corroborating evidence prior to admission of the defendant's out of court statement. *Groves v. State* (1985), Ind.App., 479 N.E.2d 626, 628. Thus, if the crime entailed proof of occurrence on public roads, Huey's statement was improperly admitted, and the evidence is insufficient.

█ Indiana Code Ann. § 9–11–2–2 (Burns 1986 Supp.) provides "A person who operates a vehicle while intoxicated commits a class A misdemeanor." The statute notably makes no mention of where the "operation" may take place, nor what ac-

tions constitute "operating." However, this court has held sitting behind the wheel of the car with motor running and lights on constitutes "operating." *See Garland v. State* (1983), Ind.App., 452 N.E.2d 1021; *Rose v. State* (1976), 168 Ind.App. 674, 345 N.E.2d 257.[1]

Furthermore, it is not necessary the "operating" occur on a public road. In *State v. Carter* (1981), Ind.App., 424 N.E.2d 158, in construing the predecessor "operating" statute Ind.Code Ann. § 9–4–1–34 (Burns 1976), the court held the absence of an explicit requirement of proof of operation on a public highway indicated the legislature recognized the need to protect the public from drivers intoxicated on private property such as shopping centers, apartment complexes, and other private areas where the public is invited. The court further noted I.C. § 9–4–1–22 provided generally that offenses delineated in chapter 1 must occur on public roads, but exempted the public road requirement for some violations, including a violation of I.C. § 9–4–1–54.

Seizing upon this observation, Huey argues the current drunk driving statute, I.C. § 9–11–2–2, is in a separate chapter and is a traffic offense, and, therefore, I.C. § 9–4–1–22 does not apply to exempt the statute from the requirement the offense occur on public roads. However, it is equally true the general requirement in I.C. § 9–4–1–22 that offenses must occur on public roads only applies to those offenses contained in chapter 1 of article 9. His argument is unavailing.

In summary, as with the predecessor statute, there is no requirement in the current operating statute, the operating occur on a public road, and we conclude, as did the court in *State v. Carter*, this indicates a legislative recognition of the need to protect the public from drunk drivers on private property as well as on public roads.[2]

---

1. Although these cases construe Ind.Code Ann. § 9–4–1–54 (Burns 1976), (repealed) the former statute also employed the terminology "operating".

2. Huey argues if § 9–11–2–2 does not require operation on public roads, roller skating on one's porch while intoxicated constitutes operating while intoxicated because I.C. § 9–11–1–9

Consequently, it was not necessary for the state to prove Huey operated his vehicle on public roads. Therefore, there was sufficient evidence to convict Huey of the offense, and his out of court statement was not admitted in contravention of the rule requiring prior corroborating evidence of the *corpus delecti.*

### C.

■ Huey last asserts the results of his field sobriety tests were wrongfully allowed into evidence because he was not given *Miranda* warnings prior to their administration. Huey argues field sobriety tests, unlike forced blood tests approved by the United States Supreme Court in *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, require participation by the test subject and are essentially communicative in nature. *Dicta* in *Schmerber* in fact stated "[t]o compel a person to submit to testing in which an effort will be made to determine his guilt or innocence on the basis of physiological response, whether willed or not, is to evoke the spirit and history of the Fifth Amendment." 384 U.S. at 764, 86 S.Ct. at 1832. However, the Indiana Supreme Court, in *Heichelbech v. State* (1972), 258 Ind. 334, 281 N.E.2d 102, held field sobriety tests are not communicative in nature, and *Miranda* warnings are not required prior to their administration. *See also Rowe v. State* (1973), 157 Ind.App. 283, 299 N.E.2d 852; *Smith v. State* (1986), Ind.App., 496 N.E.2d 778. Consequently, it was not error to admit into evidence the results of the field sobriety tests in this case.

Judgment affirmed.

CONOVER, P.J., and BUCHANAN, J., concur.

broadly defines "vehicle" as "a device for transportation by land or air." While there may indeed be constitutional limitations imposed on the statutory breadth of this offense by virtue of the finite concerns for health, safety, and welfare that must underpin state power to legislate,

the facts of this case, Huey's auto at an open service station where the public was invited, adjacent to public roads, clearly implicate the legitimate state interest in controlling intoxicated vehicle operation as discussed in *State v. Carter.*