**D & L BUILDING & REMODELING, INC., Appellant (Claimant Below),**

v.

**Harry E. EAKIN, as Insurance Commissioner of the Department of Insurance of the State of Indiana, and Mercantile & General Reinsurance, et al., Appellees (Petitioner Below).**

No. 49A02-8805-CV-00163.

Court of Appeals of Indiana, Second District.

Nov. 30, 1989.

David M. Haskett, Locke Reynolds Boyd & Weisell, Indianapolis, for appellant.

Charles T. Richardson, Roberta Sabin Recker, Richard T. Freije, Jr., Baker & Daniels, Indianapolis, for appellee Indiana Ins. Com'r, Harry E. Eakin, as Liquidator of Allied Fidelity Ins. Co.

Charles W. Linder, Jr., Linder & Hollowell, Indianapolis, for appellee Reinsurers.

SHIELDS, Presiding Judge.

D & L Building and Remodeling, Inc. (D & L) appeals an adverse judgment in the liquidation proceedings of Allied Fidelity Insurance Company (AFIC).

We affirm.

## ISSUE

Whether D & L may maintain an action against the reinsurers of subcontractor's bonds without joining AFIC as a defendant.

## FACTS

D & L contracted to build a facility in Rock Springs, Wyoming. D & L subcontracted work to Alpine Plumbing and Heating, Inc. As Alpine's surety, AFIC, an Indiana corporation, issued a performance bond and a subcontract labor and material bond for the project in the penal sum of $1,194,000 each. AFIC reinsured its obligation under a treaty reinsurance agreement.

AFIC was ordered liquidated by the trial court on July 15, 1986; all actions against AFIC were enjoined. D & L filed a claim against AFIC's estate in the amount of $591,186.49. Also, based upon the language of the reinsurance agreement, D & L asserted that, as obligee, it had a direct right of action against the reinsurers to pursue the reinsurance proceeds without joining AFIC as a defendant. The trial

court disagreed and ordered all reinsurance proceeds paid to AFIC's Liquidator, Harry Eakin, Insurance Commissioner of the Department of Insurance of the State of Indiana (Liquidator). D & L appeals this judgment.

## DISCUSSION

D & L concedes that under Indiana law it, as an obligee, does not have a right to the reinsurance proceeds unless the insurance agreement provides the right. However, D & L asserts the reinsurance agreement between AFIC, the ceding insurer, and its reinsurers provides the right because the agreement incorporates, as applicable law, § 315 of the New York Insurance Law [1] which provides for such a direct action. The Liquidator and reinsurers assert Indiana statutory law mandates all reinsurance proceeds due an insolvent ceding insurer be paid directly to the Liquidator except in circumstances not at issue here.

D & L's argument is partially correct. The reinsurance agreement incorporates the provisions of § 315 but only as a contract term, not as applicable law. However, inasmuch as parties are free to contract as they see fit unless the agreement is illegal or violates public policy, the fact that § 315 is not applicable law is of no consequence. [2]

Article XVII of the reinsurance agreement in relevant part, reads:

(C) It is further understood and agreed that in the event of the insolvency of one or both of the reinsured companies, the reinsurance under this Contract shall be payable directly by the Reinsurer to the company or its liquidator, receiver, or statutory successor, *except as provided by section 315 of the New York insurance Law* or except (a) where the Contract specifically provides another payee of such reinsurance in the event of the insolvency of the company and (b) where the Reinsurer with the consent of the direct insured or insureds has assumed such police obligations of the company as direct obligations of the Reinsurer to the payees under such policies and substitution for the obligations of the company to such payees.

Record at 74 (emphasis added).

New York Insurance Law § 315 provides that

[i]n applying the limitation of section one thousand one hundred fifteen of this chapter to fidelity and surety risks the net amount of exposure on any one fidelity or surety risk shall, except as provided in paragraph four hereof, be deemed within the limit of ten percent if the company is protected in excess of that amount by:

(A) reinsurance in a company authorized to write such business in this state or reinsurance in an accredited reinsurer, as defined in subsection (a) of section one hundred seven of this chapter, *which is in such form as to enable the obligee or beneficiary to maintain an action thereon* against the ceding insurer jointly with the assuming insurer or, where the commencement or prosecution of actions against the ceding insurer has been enjoined by any court of competent jurisdiction or any justice or judge thereof, *against the assuming insurer alone, and to have recovery against the assuming insurer for its*

---

**1.** Recodified as New York Insurance Law § 4118(a)(1).

**2.** D & L argues that Article XII which incorporates Paragraph 14 of the Standard Form of General Reinsurance Agreement of the Surety Association of America makes § 315 applicable law. Paragraph 14 provides that the reinsurance agreement "shall be deemed to comply with any law, whenever applicable" and that § 315 is applicable law because it is incorporated into the agreement by Article XVII. This argument is without merit. Applicable law within the meaning of Paragraph 14 is the law of the State which regulates or controls the rights and liabilities of the parties arising out of the contract. It does not include a statute which the parties have incorporated into the agreement in lieu of reciting the statute, i.e., a contract provision agreed upon between the parties without regard to whether the law of the state is applicable to the contract.

*share of the liability thereunder and a discharge thereof; ....*

(Emphasis added.)

The parties incorporated § 315 as a term of the contract. The incorporated contract provision contemplates an obligee may sue a reinsurer alone in the event an action against the ceding insurer is enjoined thereby forestalling an action against both the ceding insurer and reinsurer.[3] In turn, the reinsurer's liability on its agreement would be discharged to the extent of the recovery against it.

The Liquidator and reinsurers argue the contractual provision violates IC 27–9–3–30 (1988) and the public policy of this state expressed in IC 27–9–1–1 *et seq.* that reinsurance proceeds should benefit *all* creditors.

IC 27–9–3–30 (1988) reads:

The amount recoverable by the liquidator from reinsurers may not be reduced as a result of delinquency proceedings, regardless of any provision in the reinsurance contract or other agreement. Payment made directly to an insured or other creditor shall not diminish the reinsurer's obligation to the insurer's estate except when the reinsurance contract provided for direct coverage of a named insured and the payment was made in discharge of that obligation.

■ This statute does not prohibit a direct action; it merely denies a reinsurer credit against its obligation to the Liquidator for any sum it pays as a result of the direct action unless it otherwise qualifies under the statute.[4] Thus, to the extent a reinsurer pays any unqualified judgment obtained in a direct action against it, the reinsurer faces double liability. Therefore, a direct action provision violates neither IC 27–9–3–30 nor the public policy expressed in IC 27–9–1–1 *et seq.*

■ However, a contractual provision for a corresponding discharge directly conflicts with IC 27–9–3–30. It also conflicts with our state's public policy. A direct action against a reinsurer alone with a corresponding discharge grants a preference. A preference is inconsistent with the public policy contained in the Indiana statutory scheme that reinsurance proceeds should benefit all creditors. Hence, a contractual provision for discharge must fail. Therefore, if the subject contractual direct action provision is independent of the offending corresponding contractual discharge provision, D & L has a direct action against the reinsurers and the reinsurers face double liability.

■ The provisions are not independent. The subject contractual provision provides for an action, recovery, *and* a corresponding discharge. Without the discharge, there is no direct action or recovery. "And" is a conjunction which should be accorded its ordinary meaning unless it renders the sense of the contractual provision dubious. Upon reading the whole contractual provision it is obvious the ceding insurer and reinsurers intended "and" in its usual meaning; *i.e.,* direct action, recovery *and* discharge exist together or not at all. *See Barr v. Sun Exploration Co., Inc.* (1982), Ind.App., 436 N.E.2d 821, 824–25 ("The words 'and' and 'or' as used in statutes are not interchangeable ... and their ordinary meaning should be followed if it does not render the sense of the statute dubious.") Were the clause to be read otherwise, the contractual provision would have the ceding insurer and the reinsurer agreeing, irrationally and without consideration, to reinsurer's double liability. That meaning of the contractual provision is indeed dubious.

Therefore, because reinsurers cannot have a discharge of their obligation under the subject reinsurance agreement for any recovery against them by D & L in a direct action against reinsurers alone, the right of direct action does not exist under the reinsurance agreement. The trial court did not err when it determined D & L does not

---

**3.** Indiana's limitation of risk statute, IC 27–1–13–6(b) (1988), requires a contractual provision providing for a joint action against the ceding insurer and the reinsurer.

**4.** It is undisputed that the instant reinsurance agreement does not provide direct coverage for D & L.

have a right of direct action against the reinsurers alone and ordered all reinsurance proceeds paid to Liquidator.

In all respects, including the determination that reinsurance proceeds shall be paid to the Liquidator, the judgment is affirmed.

BAKER and SULLIVAN, JJ., concurs.