Ronald W. MEISLER and Donald G. Meisler, Appellants–Plaintiffs,

v.

GULL OIL, INC., et al., Appellees–Defendants.

No. 82A01–0512–CV–572.

Court of Appeals of Indiana.

June 13, 2006.

Keith E. Rounder, Julia B. Langerak, Bowers Harrison LLP, Evansville, IN, Attorney for Appellant.

Stephen T. Link, Evansville, IN, Attorney for Appellee Gull Oil.

William C. Illingworth, Rhine, Ernest & Vargo, Evansville, IN, Attorney for Appellee Barker.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Ronald and Donald Meisler (collectively, the Meislers) appeal from the trial court's order entering final judgment in favor of appellee-defendant Gull Oil, Inc.[1] (Gull Oil). In particular, the Meislers contend that Gull Oil's actions with respect to a particular portion of property covered by an oil and gas lease breached a clause of the lease and the implied covenant of reasonable development. Finding no error, we affirm the judgment of the trial court.

### FACTS

This dispute concerns a seventy-year-old oil and gas lease (the Lease) on land in Vanderburgh County. Thirty-three wells have been drilled on the land, and two commercially productive zones have been discovered and developed. Over the life of the Lease, the land has produced 975,461 barrels of oil, and the total value of that production is over $58 million.

The Lease covers approximately 221 acres, and over time, there have been numerous assignments and subdivisions of the lease. The Meislers acquired ownership of the 221 acres through two separate transactions. Additionally, there are four separate "division orders" under which oil

was marketed to the refinery. The Meislers own the surface and part of the oil and gas—and accompanying royalty—under two of the division orders. They also own the surface, but none of the oil and gas, under a third division order. They own no interest under the fourth division order. At the time of the initiation of this action, the four division orders were operated by three different oil companies, including Gull Oil.

At issue in this appeal are fifty acres (the Acreage) of the land covered by the Lease. Specifically, they are fifty acres on which the Meislers own the surface and part of the oil and gas. When the Meislers purchased the property, they knew of the Lease and the wells, inasmuch as they received, along with the deed, a separate assignment of the royalty in the lease.

During the fifteen years before trial, the Lease produced 28,462.92 barrels of oil, which was sold for the sum of $616,668.66. Furthermore, oil sales occurred frequently throughout each year. There was no evidence that a prudent operator would have drilled, developed, or operated the Lease differently than it had been.

The Meislers offered evidence that the Acreage has produced minimal amounts of oil since they have been lessors. During the 1990s, there were a number of times when there was no oil production on the Acreage for periods of one to two years. And during the time when there was oil production, the production was minimal.

On December 14, 1999, the Meislers filed a complaint against Gull Oil, seeking cancellation of the entire Lease and a declaration that the Meislers owned all of the

---

1. In 2002, Pioneer Oil purchased various portions of the oil and gas lease herein, leaving Gull Oil as a nominal defendant. Because Gull Oil is the name appearing in the caption, we will refer to the appellee by that name.

Additionally, we observe that an appearance and appellee's brief were filed by Milton Bruce Barker, who owns a "minor royalty interest" in the Lease. Barker's Br. p. 1.

oilfield equipment on the entire Lease.[2] The Meislers hoped to plug the three operating wells on the Acreage so that they could build houses on the land. In early 2005, the Meislers filed an amended complaint, seeking partial cancellation of the Lease. Specifically, the Meislers sought to cancel the lease with respect to the Acreage, and they also sought a declaration that they owned all of the oilfield equipment located on the Acreage.

Although the matter was set for trial, the parties and the trial court agreed to dispense with the presentation of evidence. To that end, on September 7, 2005, the parties submitted an agreed stipulation of facts to the trial court.[3] On October 7, 2005, the parties submitted their respective post-trial briefs to the trial court. On November 21, 2005, the trial court found in favor of Gull Oil, finding, among other things, that Gull Oil did not violate the covenant of reasonable development, that the Meislers did not provide the required notice and demand to Gull Oil that the Acreage had not been adequately developed, and that Indiana does not permit the partial cancellation of a lease. The trial court entered final judgment in favor of Gull Oil, and the Meislers now appeal.

## DISCUSSION AND DECISION

The Meislers argue that the trial court erred in entering final judgment in favor of Gull Oil. Specifically, they contend that they are entitled to the relief they are seeking because Gull Oil breached an express clause in the Lease and the implied covenant of reasonable development.

As we consider these arguments, we observe that the trial court did not conduct an evidentiary hearing and based its decision on the parties' briefs and the stipulated facts. Under these circumstances, we owe the trial court no deference, and our review is de novo. *Farmers Ins. Exch. v. Smith*, 757 N.E.2d 145, 148 (Ind. Ct.App.2001).

### I. The Habendum Clause

■■■■ The Meislers first contend that Gull Oil breached the Lease by failing to produce appropriate amounts of oil and gas from the Acreage. Oil and gas leases are contractual in nature and will be interpreted under contract law. *Stahl v. Ill. Oil Co.*, 45 Ind.App. 211, 90 N.E. 632, 633–34 (1910). To that end, when an oil and gas lease is unambiguous, it will be interpreted and enforced according to the plain meaning of its terms. *Dittman v. Keller*, 55 Ind.App. 448, 104 N.E. 40, 41 (1914).

In general, a habendum clause is the portion of a deed defining "the extent of the ownership in the thing granted to be held and enjoyed by the grantee." Black's Law Dictionary 710 (6th ed.1990). More specifically, in the context of oil and gas law, the purpose, operation, and construction of the habendum clause in oil and gas leases has been described as follows:

> "The modern habendum clause, with its short primary term and its 'thereafter' provision, is designed to measure the

---

2. Neither the original nor the amended complaints are included in the record on appeal.

3. Included among the stipulated facts was a series of statements regarding an affidavit (the Meisler Affidavit), with the Meisler Affidavit attached as an exhibit. Although Gull Oil objected to this stipulation and the inclusion of the Meisler Affidavit based on relevancy, the trial court overruled the objection in

its final order. Gull Oil's App. p. 26. The Meislers include a lengthy argument in their opening and reply briefs regarding the Meisler Affidavit and its relevancy to the matters at hand, but inasmuch as the trial court overruled Gull Oil's objection and considered the stipulation and the affidavit in arriving at its conclusion, we do not understand what point of error the Meislers are raising and, therefore, will not address this argument.

duration of the oil and gas lease by its primary objective, the production of oil or gas. The clause seeks to assure the lessor that the leased premises will be put in production, from which the lessor will be paid a royalty, within the primary term or the lease will terminate, either at the end of the primary term, or if there is then production, thereafter upon the cessation of production. The lessee is assured of a fixed time in which to obtain production and of keeping the lease as long as production continues." Gull Oil's Br. p. 6 (quoting 3 Williams, Howard R. and Meyers, Charles J., *Oil and Gas Law* § 604 (1985)).

■ Here, the habendum clause in the Lease provides that the Lease shall remain in force so long "as oil or gas, or either of them, is produced" from the 221 acres covered by the Lease. Gull Oil's App. p. 33. The Meislers do not contend that production was limited or nonexistent on the entire property covered by the Lease. Indeed, they stipulated that there has been continuous production on the Lease. *Id.* at 29. Instead, the Meislers focus on the Acreage and argue that the habendum clause and the Lease are divisible and that the clause applies separately to the distinct portions of the leased property. Thus, because—according to the Meislers—the production on the Acreage has been nonexistent for certain periods of time, Gull breached the habendum clause with respect to that portion of the leased property.

Initially, we look to the plain and unambiguous language of the contract, which provides that the Lease shall remain in force so long "as oil or gas, or either of them, is produced from said land"—the full 221 acres covered by the Lease. Gull Oil's App. p. 33. There is simply no support in this unambiguous contractual language for the Meislers' argument that Gull Oil has breached this clause if it fails, for a time, to produce oil or gas from a *portion* of the leased property. Nothing in the clause suggests that it is divisible. Rather, it is apparent that so long as oil or gas is being produced from the full 221 acres—and the Meislers stipulated that there has been continuous production on the Lease—there is no breach of the habendum clause. We also note that it is of no consequence that portions of the original oil and gas lease were assigned separately: " 'Absent a contrary provision in the lease, the habendum clause is unaffected by assignments or partial assignments by the lessor or by the lessee.' " Barker's Br. p. 4 (quoting 3 Williams and Meyers, *supra,* § 604.10).

Furthermore, a majority of jurisdictions and authorities hold that the habendum clause applies to the entire leased premises, and not to its separate parts. Appellee's Br. p. 7 (citing to 3 Williams and Meyers, *supra,* § 604.10; 2 Kuntz, Eugene, *A Treatise on the Law of Oil and Gas* § 26.10 (1987); 2 Summers, W.L., *The Law of Oil and Gas* § 512 (1954)). A panel of this court considered a similar issue in *Wilson v. Elliott,* 589 N.E.2d 259 (Ind.Ct.App.1992). In *Wilson,* the landowner argued unsuccessfully on appeal that he was entitled to partial cancellation of the oil and gas lease at issue based upon an affidavit he had recorded pursuant to the oil and gas cancellation statute, then codified at Indiana Code section 32–5–8–1, and now recodified at Indiana Code section 32–23–8–1. In the affidavit, the landowner sought to cancel the lease as to 60 acres of the 120–acre lease. We rejected that argument, concluding as follows:

> If we interpreted Indiana Code 32–5–8–1 as permitting partial cancellation of leases, lessors would be free to cancel from leases any parcel of land, no matter how large or small, provided there was no production or development on the specific piece of land for a period of more than one year. The land covered

by a lease is deemed a unit and it is the nonproduction and nondevelopment of the unit as a whole that supports cancellation of the lease.

*Id.* at 262 n. 3. We see no reason to depart from the *Wilson* analysis, and similarly conclude herein that the Meislers' argument that Gull Oil failed to produce oil or gas from the Acreage—a small portion of the total leased property—is insufficient to establish that the habendum clause has been breached and to support a partial cancellation of the Lease.

## II. Implied Covenant of Reasonable Development

■ The Meislers next contend that in allegedly failing to produce oil or gas from the Acreage for certain periods of time, Gull Oil breached the implied covenant of reasonable development. The implied covenant of reasonable development imposes an obligation on an oil and gas lessee to diligently explore and develop the leased premises. *Gadbury v. Ohio & Ind. Consol. Natural & Illuminating Gas Co.,* 162 Ind. 9, 67 N.E. 259, 262 (1903). The purpose of this covenant is to obligate the lessee to use its best efforts to provide the landowner with the expected income from the royalties that induced him to grant the lease in the first place. 53A Am.Jur.2d, Mines and Minerals § 221 (2005).

■ In measuring the performance of the implied covenant, Indiana has adopted an objective standard. *Manhattan v. Carrell,* 164 Ind. 526, 73 N.E. 1084, 1086 (1905); *Gilbert v. Bolds,* 62 Ind.App. 595, 113 N.E. 379, 380 (1916). Hence, when, as here, the lease does not fix the number of wells that must be drilled to qualify as reasonable development, the lessee—the oil and gas operator—has "the right to determine the number of wells or the extent of the development, and his decision is conclusive so long as he acts honestly and in good faith upon sound business princi-

ples." *Gilbert,* 113 N.E. at 380; *see also Manhattan,* 73 N.E. at 1086 (holding that in examining whether sufficient wells have been drilled, we must question whether the circumstances would "induce ordinarily prudent persons in like business to expect a reasonable profit on the full sum required to be expended in the prosecution of the enterprise").

All parties agree that the implied covenant of reasonable development includes drilling additional wells, but they disagree as to whether it includes the diligent operation of existing wells. Initially, we note that the implied covenant of reasonable development applies only when there is no express provision in the lease governing such matters. 53A Am.Jur.2d Mines and Minerals § 221 (2005). Here, the Lease is silent regarding the number of wells that must be drilled on the leased property. Consequently, the implied covenant applies to the parties herein with respect to the drilling of wells.

■ But as to the operation of and production from existing wells, the Lease contains the aforementioned habendum clause, which provides that so long as oil or gas is produced from the leased property, the Lease will remain in effect. Gull Oil's App. p. 33. Because there is an express clause in the Lease governing production of oil and gas, the Meislers may not turn to the implied covenant of reasonable development on that issue. Along the same lines, although the Meislers argue that if the covenant does not apply to production from existing wells then lessors are offered little or no protection, we note that the protection stems—as it should—from the Lease itself.

■ Here, the Meislers presented no evidence, expert or otherwise, that a prudent operator would have undertaken further development of the Lease, in general, or of the Acreage, in particular. The rec-

ord reveals that thirty-three wells have been drilled on the 221 acres covered by the Lease, that nearly one million barrels of oil have been produced from the Lease, that production has been continuous since the drilling of the first wells on the Lease, and that the total value of production totals over $58 million. And while it is true that the record reveals certain periods of time in which there was little or no production from the Acreage, the Acreage currently has three operating wells, and the Meislers offered no evidence that any other prudent operator would have developed the land any differently. Under these circumstances, it is apparent to us that the trial court properly concluded that Gull Oil's conduct with respect to the leased property and the Acreage has satisfied the implied covenant of reasonable development.[4]

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.

4. The Appellees argue that the Meislers cannot raise the implied covenant of reasonable development because they failed to provide the requisite notice and demand to Gull Oil. Because we conclude that there has been no breach of the implied covenant, we need not reach the issue of whether notice and demand are, indeed, a prerequisite to establishing such a breach.