# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**BRYAN H. BABB**
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS E. MIXDORF**
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| L.C. NEELY DRILLING, INC. and MAVERICK ENERGY, INC., | ) | |
| | ) | |
| Appellants - Defendants, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-MI-457 |
| | ) | |
| HOOSIER ENERGY RURAL ELECTRICAL COOPERATIVE, INC., | ) | |
| | ) | |
| Appellee - Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1202-MI-7392

**April 30, 2014**

**OPINION - FOR PUBLICATION**

**FRIEDLANDER, Judge**

L.C. Neely Drilling, Inc. and Maverick Energy, Inc. (collectively, Maverick) appeal from the trial court's ruling in favor of Hoosier Energy Rural Electrical Cooperative, Inc. (Hoosier Energy) upon the parties' cross-motions for partial summary judgment. On appeal, Maverick argues that it was entitled to summary judgment or, alternatively, that a genuine issue of material fact precluded summary judgment in Hoosier Energy's favor.

We affirm.

In 2003, the owners of a large tract of land in Sullivan County entered into an oil and gas lease with one of Maverick's predecessors as lessee (the Original Lease). The Original Lease provided for a three-month option period ending on January 3, 2004. Paragraph 25 of the Original Lease provided that "if actual royalties are not being paid to lessor 36 months after the exercise of this option, lessee shall pay lessor $5.00 per acre advanced royalties per year until royalty is actually received." *Appellant's Appendix* at 103. Paragraph 15 (the Demand Clause) required the lessor to demand payment prior to termination of the lease due to the lessee's failure to promptly pay "any amount due" under the lease. *Id.* at 101.

In 2008, Maverick and the then-lessor entered into a "Ratification, Clarification and Amendment to Lease" (the Lease Amendment). *Id.* at 112. The Lease Amendment provided that the lease would remain in force for a primary term of five years from its January 3, 2004 commencement date, and continue thereafter for "as long . . . as gas is produced and sold from the Lands or from lands pooled therewith or advance royalties are paid pursuant to Paragraph 25 of the Lease[.]" *Id.* at 113. Additionally, Paragraph 25 of the Original Lease was amended as follows:

If neither royalties for actual production nor shut-in gas royalties are being paid or accruing at the expiration of thirty-six (36) months from the Commencement Date, the Lease shall be continued in force and effect from year to year and gas shall be considered as being produced in paying quantities for all purposes under the Lease, upon payment or tender to the Lessor of Advance Royalties payable at the rate of Five Dollars ($5.00) per net mineral acre per year, with the first payment to be made on or before thirty (30) days following expiration of said 36 months and upon similar payments being made annually thereafter on or before the anniversary date of the expiration of said 36 month period. However, in no event shall the payment of such Advance Royalties operate to extend the term of this Lease beyond ten (10) years following the Commencement Date of the Lease.

*Id.* at 113-14 (the Advance Royalties Clause). The Demand Clause was not amended.

As of January 2012, no actual or shut-in royalties had been paid. Thus, the Advance Royalties Clause was still in effect. By that time, Hoosier Energy had acquired fee simple title to the leased property. Maverick did not pay advance royalties for 2012 by the January 3, 2012 deadline. On or about January 27, 2012, Maverick sent a check to Hoosier Energy for the advance royalty payment. In early February 2012, Hoosier Energy returned the check and notified Maverick that the lease had terminated because advance royalties were not timely paid.

On February 23, 2012, Hoosier Energy filed a Verified Petition for Judicial Review of Administrative Order and Complaint for Declaratory Judgment/Quiet Title. In Count I of the pleading, Hoosier Energy sought reversal of an administrative order issued by the Indiana Natural Resources Commission concerning Maverick's plans to begin drilling on the property. In Count II, Hoosier Energy sought judgment declaring that the lease had expired and quieting title in favor of Hoosier Energy. Hoosier Energy and Maverick filed cross-motions for summary judgment as to Count II. On January 16, 2013, the trial court granted

3

Hoosier Energy's motion and denied Maverick's. On February 14, 2013, the trial court granted Maverick's motion for the entry of final judgment pursuant to Ind. Trial Rule 54(B). The trial court subsequently denied Maverick's motion to correct error, and this appeal ensued.

"When reviewing a trial court's ruling on a motion for summary judgment, this court stands in the shoes of the trial court and applies the same standards in deciding whether to affirm or reverse the ruling." *Longest ex rel. Longest v. Sledge*, 992 N.E.2d 221, 225 (Ind. Ct. App. 2013), *trans. denied*. Accordingly, we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267 (Ind. 2009). In doing so, we must construe all factual inferences in the non-moving party's favor and resolve all doubts as to the existence of a genuine issue against the moving party. *Chang v. Purdue Univ.*, 985 N.E.2d 35 (Ind. Ct. App. 2013), *trans. denied*. The filing of cross-motions for summary judgment does not alter this standard, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

We note that the trial court in this case entered findings and conclusions in support of its summary judgment order. "While the entry of specific findings and conclusions offers insight into the reasons for the trial court's decision on summary judgment and facilitates appellate review, such findings and conclusions are not binding on this court." *Minix v. Canarecci*, 956 N.E.2d 62, 67 (Ind. Ct. App. 2011), *trans. denied*. We may affirm an order

4

granting summary judgment on any theory supported by the designated materials. *Minix v. Canarecci*, 956 N.E.2d 62.

This case involves the interpretation of an oil and gas lease. Such leases "are contractual in nature and will be interpreted under contract law." *Meisler v. Gull Oil, Inc.*, 848 N.E.2d 1112, 1114 (Ind. Ct. App. 2006), *trans. denied*.

> The goal of contract interpretation is to ascertain and give effect to the parties' intent. We will determine the intent of the contracting parties by analyzing the contractual language within the four corners of the document. If that language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument. A contract is not ambiguous merely because the parties disagree as to its proper construction.

*Bd. of Com'rs of Delaware Cnty. v. Evans*, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012) (quoting *Beazer Homes Ind., LLP v. Carriage Courts Homeowners Ass'n, Inc.*, 905 N.E.2d 20, 22-23 (Ind. Ct. App. 2009)); *see also Meisler v. Gull Oil, Inc.*, 848 N.E.2d at 1114 (noting that "when an oil and gas lease is unambiguous, it will be interpreted and enforced according to the plain meaning of its terms"). "Construction of a written contract is generally a question of law for which summary judgment is particularly appropriate." *Niezer v. Todd Realty, Inc.*, 913 N.E.2d 211, 215 (Ind. Ct. App. 2009), *trans. denied*.

Maverick argues that in denying its motion for partial summary judgment and granting Hoosier Energy's, the trial court misinterpreted the lease. Maverick concedes that advance royalties for 2012 were not timely paid, but argues that Hoosier Energy was required to demand payment as set forth in the Demand Clause before terminating the lease, which it did not do. Hoosier Energy responds that pursuant to the Advance Royalties Clause, the lease

5

automatically terminated when Maverick failed to timely pay advance royalties, and that the Demand Clause does not apply.

Contractual provisions like the Advance Royalties Clause, which allow an oil and gas lessee to make a minimum payment to the lessor in exchange for the right to defer development of the property, have been the subject of extensive legal commentary. In the lease at issue here, these payments are referred to as advance royalties; in many other leases, they are referred to as delay rentals. 58 C.J.S. *Mines and Minerals* § 323 (defining a "delay rental" as "the rent the lessee agrees to pay the lessor when drilling operations are deferred or the consideration paid by the lessee to the lessor in return for permission to delay drilling or production"). These provisions generally fall into one of two categories: "drill or pay" clauses or "unless" clauses. 2 Summers Oil and Gas § 15:1 (3d ed.). Under a "drill or pay" clause, a lessee has an obligation to either commence production within a certain timeframe or pay advance royalties, and the failure to do one or the other constitutes a breach of the lease, but does not automatically terminate the lease. 58 C.J.S. *Mines and Minerals* § 324; *Phyfer v. San Gabriel Dev. Corp.*, 884 F.2d 235 (5th Cir. 1989). To obtain relief, the lessor must sue for breach of contract, seeking damages or forfeiture of the lease. *Phyfer v. San Gabriel Dev. Corp.*, 884 F.2d 235.

An "unless" clause, on the other hand, provides that a lease will terminate automatically after the expiration of a specified term unless the lessee either drills or pays advance royalties by a prescribed date. 58 C.J.S. *Mines and Minerals* § 324. Such a clause imposes no duty upon the lessee to drill or to pay advance royalties; instead, "payment is a

condition precedent to the continuance of the lessee's privilege of drilling, or, stating another way, the non-payment is a limitation upon the happening of which the lease terminates." 2 Summers, *supra*, § 15:1; *see also Ohio Oil Co. v. Detamore*, 165 Ind. 243, 73 N.E. 906 (1905) (interpreting a clause providing that if no well was completed within six months, the lease would become null and void unless the lessee paid delay rentals, and concluding that "[t]he sum total of the [lessee's] unconditional agreement is that, if it failed to do one thing or the other . . . the contract should be at an end"). In other words, an "unless" clause gives the lessee the option to (1) continue the lease by either drilling or paying advance royalties by a specified date, or (2) decline to drill or timely pay advance royalties, thereby allowing the lease to automatically terminate without any further action on the part of the lessor. *See* 3 Summers, *supra*, § 30:1; *Petroleum Eng'rs Producing Corp. v. White*, 350 P.2d 601, 604 (Okla. 1960) (noting that "[i]t is settled law that [an 'unless'] lease terminates without affirmative action on the part of lessor upon lessee failing to either commence a well or pay delay rentals within the period provided in the lease").

The Advance Royalties Clause at issue in this case provides, in relevant part, as follows:

> If neither royalties for actual production nor shut-in gas royalties are being paid or accruing at the expiration of thirty-six (36) months from the [January 3, 2004] Commencement Date, the Lease shall be continued in force and effect from year to year . . . upon payment or tender to the Lessor of Advance Royalties . . . being made annually thereafter on or before the anniversary date of the expiration of said 36 month period."

*Appellant's Appendix* at 113-14. The language of this provision is clear and unambiguous. After the expiration of an initial term, the lease was to continue from year-to-year if the

7

lessee paid advance royalties in the proper amount by January 3 of each successive year. Put another way, Maverick had the option to either renew the lease each year by timely paying advance royalties or allow the lease to expire. This is the very essence of an "unless" clause. Nevertheless, Maverick argues that the Advance Royalties Clause is not a standard "unless" clause because it does not contain the words "terminate" or "unless." "In determining the question whether a given lease is of one or the other type, it is the plain intention of the parties which controls and not necessarily the mere use of particular words in the lease." 58 C.J.S. *Mines and Minerals* § 324. Here, it is clear that the parties intended for the lease to continue year-to-year upon the timely payment of advance royalties. The only reasonable interpretation of the Advance Royalties Clause is that if advance royalties were *not* timely paid, the lease would *not* continue, i.e., it would terminate. We therefore conclude that the Advance Royalties Clause is an "unless" clause.

Next, Maverick argues that the Demand Clause required the lessor to issue a demand prior the termination of the lease for failure to timely pay advance royalties.[1] The Demand Clause provides in relevant part as follows:

> TERMINATION AND RELEASE OF LEASE: In addition to other termination provisions set forth in this lease, this lease shall terminate, as provided below in this paragraph 15, ipso facto and without further action of

---

[1] Maverick's reliance on *Woolley v. Standard Oil Co. of Tex.*, 230 F.2d 97 (5th Cir. 1956) is misplaced. The lease in that case contained an unless clause, but also contained a clause specifically providing that if a lessee attempted in good faith and with due diligence to pay rentals but failed to do so or did so incorrectly, the lease would not terminate unless the lessee failed to correct the error after receiving notice from the lessor. The lessee in that case attempted to make a timely royalty payment, but it was misdirected due to clerical errors and miscommunications with the lessor's bank. Because the lessee had acted in good faith in attempting to pay rentals, the *Woolley* court concluded that the lease remained in effect. There is no similar good-faith provision in the lease before us. Maverick's cases concerning the termination of a lease for failure to pay production royalties are also inapposite.

the parties required, upon the occurrence of any one or more of the following conditions:

> (a)     If lessee shall fail to pay, or cause to be paid, fully and promptly any amount due to lessor under this lease after the expiration of 10 days following the demand via certified mail for payment by lessor[.]

*Appellant's Appendix* at 101.

Maverick's argument fails for two reasons. First, the Demand Clause explicitly states that "in addition to other termination provisions set forth in this lease," the lease will automatically terminate under certain circumstances. *Id.* Thus, the Demand Clause contemplates the existence of separate termination provisions set forth in the lease and unambiguously states that it does not supersede them. As explained above, the Advance Royalties Clause provides for automatic termination of the lease in the event the lessee fails to timely pay advance royalties. Because the Advance Royalties Clause contains a separate termination provision, its operation is unaffected by the Demand Clause. Maverick argues that the Advance Royalties Clause was not intended to be a termination provision because other termination provisions in the Original Lease and Lease Amendment were explicitly so labeled, appearing under subheadings including the word "termination." We note, however, that the language of a subheading is but one factor to be considered in interpreting a contractual provision. *In re Marriage of Buntin*, 496 N.E.2d 1351 (Ind. Ct. App. 1986), *trans. denied.* Because the Advance Royalties Clause clearly provides that the lease will not continue, i.e., it will terminate, if advance royalties are not timely paid, we conclude that it is one of the "other termination provisions" referenced in the Demand Clause.

9

Moreover, even if we accept Maverick's assertion that the Advance Royalties Clause is not a termination provision, subsection (a) of the Demand Clause requires the lessor to make a demand for payment when the lessee has failed to pay "any amount *due*" under the lease. *Appellant's Appendix* at 101 (emphasis supplied). But as we explained above, the Advance Royalties Clause did not create an obligation under the lease to pay advance royalties. Because Maverick had the option to decline to pay advance royalties and allow the lease to expire, advance royalties never became "due" and Hoosier Energy had no right to demand their payment. Nevertheless, Maverick asserts that the Advance Royalties Clause created an obligation to pay advance royalties. In support of this argument, Maverick directs our attention to Paragraph 7 of the Lease Amendment, which provides as follows:

> Lessee's Obligations: *All payment obligations required of the Lessee* under the terms of the Lease, without regard to whether such payments are required in order to exercise the Option or maintain the Lease in effect, and *without regard to whether such payments are in the nature of earned, shut-in or advance royalties, or otherwise, have been timely paid* to Lessor and no such payments are currently in arrears. All other obligations required of Lessee under the Lease have been duly and timely performed and satisfied, Lessee is not in default with respect to any payments or other obligations under said Lease, and the Lease has been at all times since the Commencement Date, and remains as of the date hereof, in full force and effect.

*Id.* at 76-77 (emphasis supplied). According to Maverick, this provision establishes that the parties agreed at the time of the 2008 Lease Amendment that advance royalties were a "payment obligation." It is apparent, however, that Paragraph 7 was not intended to be a definitional provision. Instead, Paragraph 7 was intended to settle any outstanding disputes concerning the lease. Indeed, the Lease Amendment specifically provides that "certain questions have arisen with respect to the interpretation of the Lease in certain respects, and

10

the parties wish to resolve these question by the execution and delivery hereof to allow Maverick to prudently proceed with future development of the Lands[.]" *Id.* at 74.

Moreover, Paragraph 7 discusses Maverick's obligations only up until the date of the Lease Amendment, providing that none of the payment obligations were in arrears *on that date*. Prior to the execution of the Lease Amendment, Paragraph 25 of the Original Lease provided that "[i]f actual royalties are not being paid to lessor . . . *lessee shall pay lessor . . . advance royalties . . . until royalty is actually received.*" *Id.* at 103 (emphasis supplied). In other words, Paragraph 25 of the Original Lease was a standard "drill or pay" clause. Thus, prior to the Lease Amendment, Maverick *was* obligated to pay advance royalties if it had not begun paying actual royalties. This explains the use of the phrase "payment obligations" in conjunction with advance royalty payments in Paragraph 7. Paragraph 7 does nothing, however, to alter our conclusion that the Advance Royalties Clause set forth in the Lease Amendment did not obligate Maverick to pay advance royalties. [2]

For all of these reasons, we conclude that the lease clearly and unambiguously provided that if Maverick had not begun paying production or shut-in gas royalties by the end of the initial term, the lease would continue year-to-year upon the timely payment of advance royalties. Because Maverick failed to timely pay advance royalties, the lease expired by its own terms and without the need for Hoosier Energy to issue a demand. Because the language of the lease is clear and unambiguous, we will not consider Maverick's extrinsic

---

[2] We note that Maverick argues that where a lease is susceptible to two reasonable interpretations, it should be construed to prevent a forfeiture. We need not address this argument because we conclude that the lease clearly and unambiguously provides that the lease would automatically terminate if the lessee failed to either drill or timely pay royalties—that is, the lease is not susceptible to more than one reasonable interpretation.

evidence concerning the history of advance royalty payments.[3] *See Bd. of Com'rs of Delaware Cnty. v. Evans*, 979 N.E.2d 1042. Accordingly, there are no genuine issues of material fact and Hoosier Energy is entitled to judgment as a matter of law. The trial court therefore properly granted Hoosier Energy's motion for partial summary judgment and denied Maverick's motion for partial summary judgment.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.

---

[3] Maverick's alternative argument that there is a genuine issue of material fact precluding summary judgment is premised entirely on extrinsic evidence. Because we may not look to such evidence to interpret an unambiguous contract, Maverick's argument in this regard fails.